UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDDIE TOURELLE'S NORTHPARK        CIVIL ACTION
HYUNDAI, LLC

VERSUS                            NO: 18-11757

HYUNDAI MOTOR                     SECTION: "H"(1)
AMERICA CORP., ET AL.

# ORDER AND REASONS

Before the Court is Defendants' Second Motion to Dismiss (Doc. 28). For the following reasons, the Motion is GRANTED IN PART.

# BACKGROUND

This lawsuit arises out of the franchise relationship between Plaintiff Eddie Tourelle's Northpark Hyundai, LLC and Defendants Hyundai Motor America Corporation ("HMA") and Genesis Motor America, LLC ("GMA"). Plaintiff alleges that it entered into a Dealer Sales and Service Agreement ("DSS Agreement") with HMA, which gave Plaintiff the right to purchase and sell Hyundai products at its dealership, including the Hyundai Genesis. In 2015, HMA announced that the Genesis would be spun-off into a new line of luxury vehicles. Plaintiff signed an agreement with HMA to be eligible to

purchase and sell the new Genesis line vehicles ("the Participation Agreement"). The Participation Agreement required Plaintiff to upgrade its sales and service facilities in order to sell the Genesis line. To comply with the Participation Agreement, Plaintiff spent $135,208.50 on renovations and employee training.

In connection with the re-branding, HMA allegedly made conflicting representations to the Louisiana Motor Vehicle Commission ("LMVC") regarding whether the Genesis vehicles were manufactured by HMA or GMA. The LMVC found that GMA was the manufacturer/distributor of the new line and that it had failed to secure proper licensing to sell in Louisiana. As a result, HMA and GMA ordered Plaintiff and other Genesis dealers in Louisiana to stop selling the Genesis line. Plaintiff argues that as a result of Defendants' failure to secure proper licensing, it was prohibited from selling Genesis vehicles despite complying with the terms of the Participation Agreement.

Plaintiff filed suit in state court, bringing claims for breach of contract, negligence, violation of the Louisiana Motor Vehicles Act (LMVA), and violation of the Louisiana Unfair Trade Practices Act (LUTPA) against HMA and GMA. Defendants removed the case to this Court on diversity grounds. Defendants then moved to dismiss Plaintiff's claims, arguing that it had failed to state a claim for which relief could be granted. This Court granted Defendants' motion in part, dismissing Plaintiff's claims for violations of the LMVA, violations of LUTPA, negligence, and breach of contract. Plaintiff's only remaining claim was its claim against HMA for HMA's breach of its obligation to use best efforts under the DSS Agreement. However, the Court also granted

Plaintiff leave to amend its Complaint to properly plead the claims that had been dismissed.

Plaintiff thereafter amended its Complaint ("the Amended Complaint").[1] Defendants now move again for dismissal of some of Plaintiff's claims.[2] This Court will address each of their arguments in turn.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[3] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[4] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[5] The court need not, however, accept as true legal conclusions couched as factual allegations.[6] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[7] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[8] The court's review is limited to the

---

[1] Doc. 25.
[2] Doc. 28.
[3] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[4] *Id.*
[5] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[6] *Iqbal*, 556 U.S. at 678.
[7] *Id.*
[8] *Lormand*, 565 F.3d at 255–57.

3

complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[9]

## LAW AND ANALYSIS

Defendants have moved for dismissal of some of the claims in Plaintiff's First Amended Complaint. Specifically, Defendants seek dismissal of Plaintiff's claims for breach of the Participation Agreement, negligent misrepresentation, negligence, intentional interference with contract, and its claims under various solidary liability theories.

### A. Breach of Participation Agreement

In considering Defendants' First Motion to Dismiss, this Court dismissed all of Plaintiff's allegations for breach of contract except one. The Court held that Plaintiff had sufficiently alleged a breach of the DSS Agreement's requirement that HMA use its "best efforts" to provide Plaintiff with Hyundai Products. The provision of the DSS Agreement that Plaintiff alleges HMA breached states that "HMA will use its best efforts to provide Hyundai Products to [Plaintiff] subject to available supply from FACTORY, HMA's marketing requirements, and any change or discontinuance with respect to any Hyundai Product."[10] This Court specifically noted that Plaintiff had not pointed out a similar provision in the Participation Agreement, and therefore Plaintiff had not sufficiently alleged a breach of the Participation Agreement.

In its First Amended Complaint, Plaintiff now states that the Participation Agreement "specifically contemplated that sales of Genesis

---

[9] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[10] Doc. 16-2, p. 16.

4

Products from HMA to Northpark would be governed by the terms and conditions set forth in the [DSS Agreement]" and that HMA therefore breached its obligation under the Participation Agreement to use "best efforts" to provide Plaintiff with Genesis products.

Defendants move for dismissal of this claim, arguing that no provision of the Participation Agreement supports this allegation. Plaintiff opposes, pointing to the following provisions of the Participation Agreement in support of its argument that the Participation Agreement "clearly contemplated" that the terms of the DSS Agreement, including the "best efforts" clause, would govern the parties' relationship regarding the Genesis vehicles:

1. "Nothing in this Agreement removes, modifies, discharges or releases any of [HMA's] obligations under the [DSS Agreement] or any other agreement between Dealer and HMA."
2. "Dealer must at all times remain in full compliance with this Agreement and the [DSS Agreement]."
3. "HMA reserves the right to withdraw Dealer's authorization to sell and/or service the Genesis Branded Products at any time in the event the Dealer fails to adhere to any of its obligations under this Agreement or the [DSS Agreement]."
4. HMA may "create and offer a separate Genesis Dealer Sales and Service Agreement . . . for the Genesis Branded Products."
5. "To the extent of any conflict between the [DSS Agreement] and this Agreement, this Agreement shall control with respect to Genesis Branded Products."[11]

---

[11] Doc. 16-2.

While these provisions certainly indicate that the parties contemplated that the two agreements would work together to define the parties' relationship, they do not support Plaintiff's position. None of these provisions indicate that HMA undertook the same obligations to provide Genesis products that it had previously undertaken in the DSS Agreement in relation to Hyundai products. This Court declines to read into the Participation Agreement an obligation that is simply not there. Accordingly, Plaintiff's claim for breach of the Participation Agreement is dismissed.

**B. Negligence Claims**

In its original Complaint, Plaintiff alleged a claim of state law negligence against Defendants. This Court held that the negligence allegations in the Complaint failed because Defendants do not owe a general duty to Plaintiff, either because of their relationship or by statute, to obtain certain licensing or offer certain vehicles for sale. The Court found that those duties arose out of the Agreements between the parties and sounded in contract.

Plaintiff's Amended Complaint now seeks to reassert a negligence claim against both HMA and GMA. Plaintiff alleges that Defendants were negligent in failing to ensure that all licensing requirements had been met, providing confusing representations about whether the vehicles were Genesis or Hyundai, and failing to fulfill their obligations to allow Genesis automobiles to be sold in Louisiana. The Amended Complaint states that "Defendants owed a legal duty to conform to a standard of conduct imposed by the law for the

protection of automobile dealers and consumers against unreasonable risks of harm."[12]

Defendants argue that these claims should again be dismissed for the same reasons as already articulated by this Court. This Court agrees. Plaintiff's defense essentially amounts to a disagreement with this Court's prior order. An amended complaint is not the proper vehicle to make such an argument, and anyway, this Court is not compelled to change its prior holding. Plaintiff has not identified a tort duty to support a claim of ordinary negligence. Its negligence claims are again dismissed.

**C. Negligent Misrepresentation Claims**

In its Amended Complaint, Plaintiff now asserts a claim for negligent misrepresentation. To state a claim for negligent misrepresentation, Plaintiff must allege that:

> (1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation.[13]

Plaintiff's Complaint alleges that Defendants had a duty to supply correct information to it and that they breached that duty by misrepresenting the following facts: (1) that Genesis vehicles were validly licensed for sale in

---

[12] Doc. 25. The Amended Complaint also alleges that HMA had a duty to supply Plaintiff with correct information. This duty is discussed in regard to Plaintiff's claim for negligent misrepresentation.

[13] Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, Inc., 962 So. 2d 1089, 1092 (La. App. 4 Cir. 2007).

Louisiana; (2) that Genesis vehicles were Genesis luxury cars and not high-end Hyundai cars; and (3) that dealers who upgraded their dealerships to comply with the Participation Agreement would be guaranteed a Genesis dealership. Plaintiff alleges that it relied on these representations to its detriment.

Defendants argue that Plaintiff's allegations fail to state a claim for negligent misrepresentation for several reasons. First, Defendants argue that there is no duty of care owed by GMA to Plaintiff because there is no contractual relationship between them. The Louisiana Supreme Court, however, has expressly recognized that there may be a tort duty to supply correct information in cases where privity of contract is absent.[14] The court noted that a duty of reasonable care is owed when a tortfeasor knows of the prospective use of the information by its intended user.[15] Plaintiff has alleged facts suggesting that GMA was aware that Plaintiff would use the information it provided regarding the licensing of Genesis vehicles. Accordingly, the Complaint sufficiently alleges a duty owed by GMA to Plaintiff to provide correct information.

Second, Defendants argue that Plaintiff cannot sustain a claim for negligent misrepresentation on the basis of the statements identified. Defendants argue that the first statement—that Genesis vehicles were validly licensed for sale in Louisiana—was alleged to have been made only by HMA and therefore cannot support a negligent misrepresentation claim against GMA. This argument fails in light of paragraph 30 of the Amended Complaint, which states that GMA did not become a licensed distributor in Louisiana

---

[14] Barrie v. V.P. Exterminators, Inc., 625 So. 2d 1007, 1015 (La. 1993).
[15] *Id.*

8

despite holding itself out as such and representing to Plaintiff that it would obtain all necessary licenses.[16]

Next, Defendants argue that second and third statements—that the automobiles branded as Genesis were Genesis branded cars and not Hyundai cars and that dealers who upgraded their dealerships in compliance with the Participation Agreement would receive a Genesis point—cannot support a claim for negligent misrepresentation because they were contradicted by other information in Plaintiff's possession and therefore cannot have been justifiably relied on. Defendants point out that the Amended Complaint alleges that the vehicle certificates of origin and window stickers identified HMA as the manufacturer of the vehicles at issue. Further, the Participation Agreement expressly stated that HMA could terminate the Agreement at any time and does not guarantee that Plaintiff would be offered a "Genesis Dealer Agreement" in the future. Even so, this Court must view the allegations of the Complaint in a light most favorable to Plaintiff and finds that a determination of whether its reliance was reasonable is inappropriate at this stage. Accordingly, Defendants' arguments for the dismissal of Plaintiff's negligent misrepresentation claims fail.

**D. Intentional Interference with Contract Claim**

Next, Defendants move for dismissal of Plaintiff's claim that GMA interfered with HMA's obligation to use best efforts under the DSS Agreement.

---

[16] Doc. 25.

Defendants argue that under Louisiana law, an intentional interference with contract claim cannot be maintained against a corporate entity.

In *9 to 5 Fashions, Inc. v. Spurney*, the Louisiana Supreme Court recognized for the first time a narrow claim for tortious interference with contract based on "a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person."[17] Most courts have refused to expand this holding to allow an intentional interference with contract claim in other contexts.[18] "Jurisprudence has held that only a corporate officer, and not a manager or a corporation, may be liable to the corporation for tortious interference with contract."[19]

Plaintiff argues that while the court's holding in *Spurney* was narrow, it does not bar an action for tortious interference against a corporate entity. It points out that some courts hold that to bring a tortious interference with contract claim the plaintiff need only show that the defendant had a duty not to interfere with the Agreements. Indeed, the Fifth Circuit has stated that "[w]here the Louisiana appellate courts have found a viable cause of action for tortious interference with a contract, the courts have identified a narrow, individualized duty between the plaintiff and the alleged tortfeasor."[20] Despite this argument, Plaintiff does not identify any individualized duty owed to it by GMA. In addition, it does not cite this Court to any case actually recognizing a

---

[17] 9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228, 234 (La. 1989).

[18] *See* Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1391 (5th Cir. 1991).

[19] Haydell Indus., LLC v. Petrucci, 702 F. Supp. 2d 688, 696 (W.D. La. 2010).

[20] Petrohawk Props., L.P. v. Chesapeake Louisiana, L.P., 689 F.3d 380, 395–96 (5th Cir. 2012).

claim for tortious interference against a corporate entity under Louisiana law.[21] "[I]t is not for this diversity court to expand that cause of action in the face of Louisiana's expressed unwillingness to do so."[22] Accordingly, Plaintiff's claim for intentional interference with contract against GMA is dismissed.

**E. Solidary Liability Theories**

In its Amended Complaint, Plaintiff alleges facts attempting to hold GMA and HMA solidarily liable for its damages under several theories, including veil-piercing, alter ego, single business enterprise, assumption of liability, estoppel, de facto merger, and mere continuation. Defendants argue that Plaintiff has not alleged facts sufficient to support a claim under any of these theories. This Court will consider each in turn.

*1. Alter-Ego Theories*

"Under Louisiana's choice-of-law rules, the law of the state of incorporation governs a request to pierce the corporate veil."[23] The parties agree then that because GMA and HMA were incorporated under the laws of California, California law applies to Plaintiff's claims under a veil-piercing, single-business-enterprise, or alter-ego theory. "In California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation

---

[21] Plaintiff cites to *Petrohawk Properties, L.P.*, 689 F.3d at 396, which held that the plaintiff could not "identify a narrow, individualized duty" to support an intentional interference claim against a corporate entity, and *Neel v. Citrus Lands of Louisiana, Inc.*, 629 So. 2d 1299, 1301 (La. App. 4 Cir. 1993), which held only that the plaintiff *may* be able to maintain an intentional interference claim if he could establish that the corporate entity owed him a duty.
[22] *Am. Waste & Pollution Control Co.*, 949 F.2d at 1391.
[23] In re Gulf Fleet Holdings, Inc., 491 B.R. 747, 784 (Bankr. W.D. La. 2013).

liable as part of a single enterprise."[24] To plead an alter-ego doctrine under California law:

> [T]wo elements must be alleged: First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. . . . Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.[25]

In support of its claim that GMA should be liable under an alter-ego theory, Plaintiff alleges that HMA wholly owns GMA and that the companies maintain the same management and operate from the same corporate location. It also alleges that the Defendants' misleading comments regarding which company is the manufacturer of the Genesis brand vehicles warrants piercing the corporate veil. While this Court doubts seriously that these allegations are sufficient to satisfy the first prong required to allege an alter-ego claim under California law, Plaintiff makes no attempt to satisfy the second. There is no allegation that would support a finding that some inequity would result from holding GMA or HMA liable for its acts alone. Accordingly, Plaintiff has not alleged a claim under any alter-ego doctrine.

---

[24] Toho-Towa Co. v. Morgan Creek Prods., Inc., 159 Cal. Rptr. 3d 469, 480 (Cal. Ct. App. 2013).
[25] Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1136–37 (C.D. Cal. 2015); LSREF2 Clover Prop. 4, LLC v. Festival Retail Fund 1, LP, 208 Cal. Rptr. 3d 200, 212 (Cal. Ct. App. 2016), *as modified* (Oct. 6, 2016) (applying factors to a single business enterprise analysis).

## 2. *Contractual Assumption of Liability and Estoppel*

Plaintiff's claims under the theories of assumption and estoppel are set out in a single paragraph:

> In or around November 2016, HMA formed GMA as a new entity to now or in the future distribute the Genesis line to United States dealerships. As a result GMA has assumed all liability of HMA under the Dealer Agreement and Participation Agreement that HMA may have to Northpark with regard to the sale and/or distribution of Genesis vehicles, including the "Genesis Sedan" and "Genesis Coupe." Alternatively, principles of estoppel preclude GMA from denying liability of HMA to Northpark under the Dealer Agreement and Participation Agreement.[26]

At the outset, the parties disagree regarding whether these claims should be governed by California or Louisiana law. Plaintiff argues that the law of the state of incorporation—California—should apply. Defendants argue that Louisiana law should apply because these are contractual issues that have nothing to do with corporate form.[27] This Court agrees with Defendants. Plaintiff's Amended Complaint alleges that HMA formed GMA to assume its liabilities under the Agreements. These arguments arise out of contract and are unrelated to the corporate form or the "internal affairs of a business entity," as Plaintiff argues.[28]

Under Louisiana law, "[a]n obligor and a third person may agree to an assumption by the latter of an obligation of the former."[29] However, in order for that assumption "[t]o be enforceable by the obligee against the third person,

---

[26] Doc. 25.
[27] *See* LA. CIV. CODE art. 3537; Doc. 16-2, p.38 (selecting Louisiana as choice of law in DSS Agreement).
[28] *See* Doc. 31.
[29] LA. CIV. CODE art. 1821.

13

the agreement must be made in writing."[30] There is no written assumption of liability between GMA and HMA in this case. Accordingly, Plaintiff cannot hold GMA liable for HMA's obligations in the Agreements.

To bring a claim for equitable estoppel, a plaintiff must allege "(1) representation by conduct or word, (2) justifiable reliance in representation, and (3) change in position to detriment because of reliance."[31] "Any party seeking to invoke estoppel must specifically plead and prove the factual elements of the doctrine."[32] Defendants argue that Plaintiff's estoppel claim should be dismissed because the Complaint does not allege that GMA ever represented that it would be honoring HMA's obligations under the DSS or Participation Agreements. This Court agrees.

*3. Successor Liability*

Finally, Plaintiff next seeks to hold Defendants solidarily liable under several successor liability theories, including implied assumption of liability, de facto merger, and mere continuation. Under both California and Louisiana law, the general rule of successor corporate liability is that, when a corporation purchases the principal assets of another corporation, it is not liable for the seller's debts or liabilities unless:

> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation

---

[30] *Id.*
[31] Babkow v. Morris Bart, P.L.C., 726 So. 2d 423, 427 (La. App. 4 Cir. 1998); *see* LA. CIV. CODE art. 1967.
[32] Knippers v. Lambard, 620 So. 2d 1368, 1375 (La. App. 2 Cir. 1993).

of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.[33]

"However, the threshold requirement to trigger successor liability . . . is that one corporation must have purchased all the assets of the other."[34] There is no allegation that GMA purchased any assets of HMA. Accordingly, these theories are inapplicable here. Plaintiff has not sufficiently plead facts to support a holding that HMA and GMA are solidarily liable for its damages under the aforementioned theories.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED IN PART. Plaintiff's claims for breach of the Participation Agreement, negligence, intentional interference with contract, and solidary liability are DISMISSED WITH PREJUDICE.

Plaintiff's claims for breach of the DSS Agreement against HMA, breach of the warranty of fitness against HMA, and negligent misrepresentation against HMA and GMA remain.

New Orleans, Louisiana this 9th day of December, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[33] Hernandez v. Enter. Rent-A-Car Co. of San Francisco, 249 Cal. Rptr. 3d 467, 471 (Cal. Ct. App. 2019); *see* Russell v. SunAmerica Sec., Inc., 962 F.2d 1169, 1175 (5th Cir. 1992).
[34] Monroe v. McDaniel, 207 So. 3d 1172, 1181 (La. App. 5 Cir. 2016).